(62 App. Div. 599.)

### BECK v. CATHOLIC UNIVERSITY OF AMERICA et al.

(Supreme Court, Appellate Division, First Department. July 9, 1901.)

MECHANICS' LIENS—SALE ON INSTALLMENTS—IMPROVEMENTS—VENDOR'S RIGHTS.

    Lien Law 1897, § 2, provides that the term "owner" shall include a vendee in possession under a contract of purchase, and all persons having any right, title, or interest in the property which may be sold under execution. Defendant sold unimproved realty to D. under a contract providing that the payments should be made in installments, and that a deed should be executed on final payment, and that D. should have the right of immediate possession for the purpose of erecting buildings. Plaintiff erected a building on the property for D., who made default in paying for the property. *Held*, that a mechanic's lien filed against defendant was enforceable, since he was an "owner," within the meaning of the statute, and the contract for immediate possession amounted to a consent on the part of the vendor that improvements be made.

    Van Brunt, P. J., and Ingraham, J., dissenting.

Appeal from special term, New York county.

Action by Louis Beck against the Catholic University of America and others. From a judgment in favor of plaintiff, the Catholic University of America appeals. Affirmed.

Argued before VAN BRUNT, P. J., and PATTERSON, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

A. J. Elkus, for appellant.
C. M. Cannon, for respondent Beck.
L. S. Phillips, for respondent Mackey.
W. N. O'Neill, for respondent Hamilton.

PATTERSON, J.  This action is to foreclose a mechanic's lien filed by the plaintiff.  The defendant Hamilton, the architect, and the defendants Mackey & Smith, material men, answered, and set up liens which they asked to have enforced.  The judgment is against the Catholic University of America, which was the owner of lots of land on Riverside Drive.  The defendant Dexter was in possession of the property under a contract of sale made with the university in June, 1897.  By that contract, the Catholic University agreed to sell the premises to Dexter for $100,000.  There was a mortgage on the lots of $50,000.  Dexter agreed to pay $500 in cash on June 5, 1897; $1,-000 in cash, with interest, on September 1, 1897; $2,000 in cash, with interest, on December 1, 1897; and, upon that last payment being made, the university was to convey to Dexter, who was to give back a mortgage for $46,000, to be paid in annual installments of $5,000.  It was further provided in the contract that if Dexter defaulted in the payment of any of the sums due on or before December 1, 1897, the contract was to be null and void, if the vendor gave 10 days' notice to the vendee that they had become due.  In December, Dexter defaulted in payment, and his right to the property under the contract ceased, and the university took possession.  In the contract between the university and Dexter is contained the following provision:  "It is further understood and agreed that the vendee shall have the right of immediate possession to the property hereinbefore mentioned and described for the purpose of erecting buildings thereon." A few days before the execution of this contract of sale Dexter had made an arrangement with the plaintiff to construct a restaurant building on the premises in question, but no work was begun until after the contract of sale had been executed and delivered by the university to Dexter.  All the terms and conditions of the contract of sale made by the university with Dexter were negotiated by Mr. Dahlgren, an attorney at law representing the university in the city of New York, that institution being a foreign corporation, located in Washington, and all of its officers residing there.  The plaintiff, while Dexter was in possession, constructed upon the premises a building at a cost of over $14,000, on account of which Dexter paid $4,500.  Dexter also paid the university $1,000, due September 1, 1897, and also the sum of $500, due upon the signing of the contract, and interest on a first mortgage from June, 1897, to August, 1897, amounting to $388.89.  The building was fully completed, with the result that the university received $1,800 in cash and a building of the value of about $15,000.  Hamilton, the architect, and Mackey & Smith, having filed their liens, the judgment herein determines that they are valid and enforceable.

Upon this appeal of the Catholic University, the first point urged by the appellant is that, under the contract between the university and Dexter, the former had no such interest in the premises as could be subject to a lien.  It is claimed that, under the lien law of 1897, Dexter should be regarded as the owner, and the only person against whom a lien could be filed.  This contention is untenable.  The second section of the lien law provides that the term "owner" includes the owner in fee of real property or of a less estate therein, a lessee

for a term of years, and a vendee in possession under a contract for the purchase of such real property, and all persons having any right, title, or interest in such real property which may be sold under an execution in pursuance of the provision of statutes relating to the enforcement of liens of judgment. Under this definition, the term "owner" embraces a vendor of real property under a contract such as that made between the university and Dexter. I do not think the provisions of section 21 of the lien law affect this subject, but that that section is a specific part of the enactment, relating solely to building loan contracts connected with the sale of land. Under the act of 1885 (section 5), it was provided:

"In cases in which the owner has made an agreement to sell and convey the premises to the contractor or other person such owner shall be deemed to be the owner within the intent and meaning of this act until the deed has been actually delivered and recorded conveying said premises pursuant to such agreements." Laws 1885, p. 587.

Under that act a vendor was held to be an owner until the deed was delivered. Schmalz v. Mead, 125 N. Y. 188, 26 N. E. 251. While this provision of the act of 1885 is not re-enacted in the law of 1897, yet the definition of section 2 of the last cited act is broad enough to include the vendor in a contract for the purchase of real estate, and I think the evident purpose of this act is to give a general right to a lien as against all persons who come within the definition of that second section, where the consent of such person to the erection of a building is shown. In this case the consent of the university is shown, not by statements or declarations of, or conversations had with, Mr. Dahlgren subsequent to the execution of the contract of sale between the university and Dexter, but by the terms of the contract. Mr. Dahlgren is not proven to have been a general agent of the university, nor authorized by it to do anything concerning the erection of buildings, after the contract of sale was made. Inferences of authority may not be drawn simply from his acts or what are testified to as having been his declarations. But the university consented to Dexter erecting the buildings on the land, and gave him the right of possession for the express purpose of putting up buildings. It was the intent of the university that buildings should be erected upon the land, and there was no other reason for giving him possession before the delivery of a deed than that such buildings might be erected. They were authorized, and express permission given. The owner knew that improvements would be made. There is an agreement that they might be made, and it is as clear and express a permission and consent as could well be given.

There are many cases upon the subject of consent of the owner to improving his land which binds that land to liens filed by those making the improvements, such as Schmalz v. Mead, 125 N. Y. 188, 26 N. E. 251; Miller v. Same, 127 N. Y. 544, 28 N. E. 387, 13 L. R. A. 701; Cowen v. Paddock, 137 N. Y. 188, 33 N. E. 154; Vosseller v. Slater, 25 App. Div. 368, 49 N. Y. Supp. 478; Steeves v. Sinclair, 56 App. Div. 448, 67 N. Y. Supp. 776; De Klyn v. Gould, 165 N. Y. 282, 59 N. E. 95; Burkitt v. Harper, 79 N. Y. 273; Otis v. Dodd, 90 N. Y. 336; Paper Co. v. Sire, 163 N. Y. 122, 57 N. E. 293. They are instructive

upon the general subject of consent.    It is unnecessary to discuss them in detail.    Here there is not mere acquiescence or an implication of consent by standing by and seeing improvements made without objection, but there is an express authorization to make improvements, contained in a contract, the conditions of which are such as to make those improvements become, by necessary consequence, the absolute property of the university in the event of Dexter failing to make any one of his payments before the time at which the deed was to be delivered to him.    The university gets the whole benefit of the completed work of the plaintiff and the other lienors.    If the lien of the plaintiff is valid and enforceable, it necessarily follows that those of Mackey & Smith and of Hamilton may also be enforced.

I think the judgment is right, and should be affirmed, with costs.

O'BRIEN and LAUGHLIN, JJ., concur.    VAN BRUNT, P. J., dissents.

INGRAHAM, J.    I cannot agree that the provision in the contract between the Catholic University of America, the appellant, and Dexter, was a consent to the erection of a building upon the property in question, within the provisions of the mechanic's lien law.    There was no particular building or improvement to be placed upon this property to which the owner consented.    Dexter had agreed to purchase the property, and upon the execution of the contract of purchase the owner gave him possession.    The purpose of the vendee in asking possession and of the vendor in granting the same was to enable the vendee to erect buildings thereon, but to give possession for a specific purpose was very far from a consent to the erection of a building, within the provisions of the lien law.    There is not the slightest evidence that this vendor ever knew of the building that was to be erected, or what the vendee was doing with the property, or that he consented to the erection of the structure which was afterwards built thereon.    All that the vendor did was to consent that the vendee should take possession of the premises.    Undoubtedly he must be chargeable with knowledge of the fact that the vendee intended to improve the property.    But that such knowledge was sufficient to prove a consent to the erection of any building which the vendee should finally conclude to put thereon seems to me to be in express conflict with the latest and best-considered cases in which this question has been discussed.    In De Klyn v. Gould, 165 N. Y. 282, 59 N. E. 95, the court of appeals said:    "The owner's interest in his real estate is not liable in every case in which, to his knowledge, labor and materials are furnished for erections upon his real property or alterations in the existing erections."    By section 3 of the lien law (chapter 418, Laws 1897) a lien is given for the improvement of real property "with the consent or at the request of the owner thereof."    And as was said in De Klyn v. Gould:

"This case, as well as the others it cites, indicated that mere acquiescence in the erection or alteration, with knowledge, is not sufficient evidence of the consent which the statute requires.    There must be something more.    Consent is not a vacant or neutral attitude in respect of a question of such

material interest to the property owner. It is affirmative in its nature. It should not be implied contrary to the obvious truth, unless, upon equitable principles, the owner should be estopped from asserting the truth."

Here there was no express consent to erect the building for which these lienors furnished materials. Such consent is sought to be implied from a simple permission given to a vendee to take immediate possession of the property, and to construe such a consent to take possession of the property into a consent to erect buildings thereon would seem to me to be giving a construction of this contract that would go far beyond what was intended by either of the parties to it. There is no claim in this case that the plaintiff or the other lienors were misled in any way by any act of the appellant, or that they relied in any way upon the provisions of the contract, and, as I view it the case fails to show such a consent as the statute requires.